UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DAVID PETERSEN, WAYNE
LITCHFIELD, CHRISTY OGRODOSKI,
LINDA JOHNSON, and WILLIAM COHEN,
individually and on behalf of all others
similarly situated,

                        Plaintiffs,

v.

CHASE CARD FUNDING, LLC, CHASE
ISSUANCE TRUST, and WILMINGTON
TRUST COMPANY, as Trustee of Chase
Issuance Trust,

                        Defendants.

**REPORT AND RECOMMENDATION**

19-CV-00741-LJV-JJM

---

        Plaintiff David Petersen seeks to recover on behalf of himself and a class of similarly situated individuals for defendants' alleged violation of New York State usury laws.[1] Petersen alleges that "[d]efendants charge, collect, and receive usurious of interest from New York consumers, including [himself], in excess of New York's usury cap. In so doing, Defendants have violated New York General Obligations Law §5-501 and New York Banking Law §14-a and also have been unjustly enriched as a result of their unlawful conduct". Class Action Complaint [1], ¶2. "New York's 'civil usury cap' forbids charging interest on a 'loan or forbearance' at a rate above 16% annually." Madden v. Midland Funding, LLC, 237 F. Supp. 3d 130, 140 (S.D.N.Y. 2017).

---

[1] The other named plaintiffs have been dismissed from the action. *See* August 6, 2019 Text Order [20]. Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

Before the court is defendants' motion to dismiss the Complaint pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6) [21].[2] Defendants argue that Peterson's usury claims are preempted by federal law (defendants' Memorandum of Law [21-1], Point I), that his claims are barred in any event by the "valid when made" rule (id., Point II), that his usury claim is partially time barred (id., Point III), and that his unjust enrichment claim is barred as being duplicative of his usury claim. Id. The motion has been referred to me by District Judge Lawrence J. Vilardo for preparation of a Report and Recommendation [46].

The motion was orally argued before me on December 11, 2019 [53]. On December 20, 2019 I issued a Request for Additional Briefing [49], to which the parties responded [54, 55]. Having reviewed the submissions by the parties and *amici* The Bank Policy Institute and the Structured Finance Association[3] [21, 28-1, 42, 45, 54, 55, 56], for the following reasons I recommend that the motion be granted.

## BACKGROUND

The facts relevant to this Motion are essentially undisputed. Petersen's unsecured credit card loans were originated by Chase Bank USA, N.A. ("Chase USA"). Complaint [1], ¶¶11, 56; Prospectus, p. 1.[4] Chase USA is (or was) "a national banking association with its principal place of business in Delaware". Shaner v. Chase Bank USA, N.A., 587 F.3d 488, 489

---

[2]   Although Peterson seeks class certification, "[c]ourts have made rulings on a wide variety of motions to dismiss prior to . . . class certification determinations, including motions to dismiss for failure to state a claim (Rule 12(b)(6))." 3 Newberg on Class Actions §7:9 (5th ed.). *See* Metz v. United States Life Insurance Co., 662 F.3d 600, 601, n. 1 (2d Cir. 2011) ("[t]he district court granted U.S. Life's motion to dismiss before Metz moved for class certification").

[3]   Judge Vilardo authorized submission of the *amicus* brief [44].

[4]   The Complaint ([1], ¶74, n. 9) provides the link to the Prospectus: https://www.sec.gov/Archives/edgar/data/1174821/000119312519034136/d658524d424h.htm.

(1st Cir. 2009).[5] Delaware "permits banks to charge interest rates that would be usurious under New York law". Madden v. Midland Funding, LLC, 786 F.3d 246, 250 (2d Cir. 2015).

Chase USA engages in a process called "securitization", whereby it sells the receivables (including interest payments) generated by its credit card loan accounts to a non-bank entity, acknowledging that they are "no longer the property, assets or rights of Chase USA". Complaint [1], ¶61. However, it remains the owner of the accounts themselves, "retain[ing] the right to change various terms and conditions . . . . including increasing or decreasing periodic interest charges". Prospectus, pp. 26, 46. It also acts as "servicer for the credit card receivables . . . . The servicer's duties include billing, collecting and investigating payment delinquencies on accounts . . . . The servicer also deposits collections on the receivables into the collection account maintained" for the owner of the receivables. Id., p. 63.

"The purpose of selling the receivables . . . before they are securitized is to separate legally (*i.e.*, isolate) the receivables from the originating financial institution, as securitization investors are looking to take on the risk and reward of the performance of the specific securitized assets, but not the credit risk of the originating bank or sponsor." *Amicus* Brief [28-1], p. 4.

## DISCUSSION

**A.     Standard of Review**

In deciding this motion, the court must "draw all reasonable inferences in Plaintiffs' favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief". Faber v. Metropolitan Life Insurance Co.,

---

[5]     In May 2019, Chase USA merged with JP Morgan Chase Bank, N.A. ("JPMCB") (Complaint [1], ¶56, n. 5), and the names are used interchangeably in this decision.

648 F.3d 98, 104 (2d Cir. 2011). It may consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken". Hu v. City of New York, 927 F.3d 81, 88 (2d Cir. 2019).

**B.     Petersen's Usury Claim**

"Although preemption . . . is an affirmative defense, it can still support a motion to dismiss if the statute's barrier to suit is evident from the face of the complaint." Ricci v. Teamsters Union Local 456, 781 F.3d 25, 28 (2d Cir. 2015). Thus, the court "may find a claim preempted only if the facts alleged in the complaint do not plausibly give rise to a claim that is not preempted". Galper v. JP Morgan Chase Bank, N.A., 802 F.3d 437, 444 (2d Cir. 2015).

The preemption inquiry involves consideration of the National Bank Act ("NBA", 12 U.S.C. §§24(Seventh) and 85) and the Dodd-Frank Wall Street Reform and Consumer Protection Act (12 U.S.C. §25b(b)(1)(B)). 12 U.S.C. §24(Seventh) grants a national bank all "incidental powers as shall be necessary to carry on the business of banking", including "discounting and negotiating promissory notes . . . and other evidences of debt". 12 U.S.C. §85 authorizes a national bank to charge and receive interest "at the rate allowed by the laws of the State, Territory, or District where the bank is located". 12 U.S.C. §25b(b)(1)(B) preempts state consumer financial laws which "prevent[ ] or significantly interfere[ ] with the exercise by [a] national bank of its powers".

The parties devote considerable attention to the Second Circuit's decision in Madden, which held that state law usury laws were not preempted against non-bank entities to whom a national bank had sold not merely credit card receivables, but the credit card accounts as well. See defendants' Memorandum of Law [21-1], pp. 9 *et seq.*; Petersen's Memorandum of Law [42], pp. 7 *et seq*. Madden focused on the capacity in which the non-bank acted. "In most

cases in which NBA preemption has been applied to a non-national bank entity, the entity has . . . acted on behalf of a national bank in carrying out the national bank's business. This is not the case here. The defendants did not act on behalf of [national banks] in attempting to collect on Madden's debt. The defendants acted solely on their own behalves, as the owners of the debt." 786 F.3d at 251. "Although national banks' agents and subsidiaries exercise national banks' powers and receive protection under the NBA when doing so, extending those protections to third parties would create an end-run around usury laws for non-national bank entities that are not acting on behalf of a national bank." Id. at 251-52.

That reasoning undercuts defendants' position in this case, for not only were these defendants *not* acting on behalf of a national bank, but in charging interest and collecting receivables, the national bank (Chase USA) was acting on *their* behalf. *See* Prospectus, p. 1 ("Chase USA will . . . be the servicer of all credit card receivables transferred to the issuing entity and will provide all administrative services *on behalf* of the issuing entity") (emphasis added). "[T]he act of the agent . . . is the act of the principal, whose mere instrument he is." Barreda v. Silsbee, 62 U.S. 146, 164 (1858). *See also* In re Grand Jury Subpoenas Duces Tecum Dated June 13, 1983 and June 22, 1983, 722 F.2d 981, 984 (2d Cir. 1983) (an agent acts "in a representative capacity, not on his own behalf").

On the other hand, Madden's treatment of Krispin v. May Department Stores, 218 F.3d 919 (8th Cir. 2000) favors defendants' position. Krispin concluded that the NBA *would* preempt state law usury claims against a store which had purchased only a national bank's credit card receivables rather than the accounts themselves. "The store's purchase of the bank's receivables does not diminish the fact that it is . . . the bank, and not the store, that issues credit,

processes and services customer accounts, and sets such terms as interest and late fees. Thus . . . it makes sense to look to the originating entity (the bank), and not the ongoing assignee (the store), in determining whether the NBA applies." Madden, 786 F.3d at 252, *quoting* Krispin, 218 F.3d at 924.

Madden reasoned that "[t]he point of the Krispin holding was . . . that notwithstanding the bank's sale of its receivables to May Stores, it retained substantial interests in the credit card accounts so that application of state law to those accounts would have conflicted with the bank's powers authorized by the NBA." 786 F.3d at 252, n. 2. "Unlike Krispin, neither [national bank] has retained an interest in Madden's account, which further supports the conclusion that subjecting the defendants to state regulations does not prevent or significantly interfere with the exercise of [the national banks'] powers." Id. at 252-53.

Because Madden contains language favorable to both sides in this case, it does not unequivocally answer the question of whether Petersen's usury claims are preempted. Instead, the answer lies elsewhere. As previously noted, 12 U.S.C. §25b(b)(1)(B) preempts a state consumer financial law if it "prevents or significantly interferes with the exercise by [a] national bank of its powers". 12 U.S.C. §24(Seventh) grants a national bank the power to "discount[ ] and negotiate[e] promissory notes . . . and other evidences of debt". In Planters' Bank v. Sharp, 47 U.S. 301, 323 (1848), the Court held that a bank "in discounting notes and managing its property in legitimate banking business . . . must be able to assign or sell those notes when necessary and proper". "[I]in the context of *stare decisis* . . . precedents tend to gain, not lose, respect with age". Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 583, n. 5 (2010).[6]

---

[6] While Planters' Bank dealt with the powers of a state bank (since it was decided before the enactment of the NBA and the establishment of a national banking system), "there is no distinction

-6-

Accordingly, the preemption analysis boils down to this: does the application of New York's usury statutes to these defendants "prevent" or "significantly interfere" with Chase USA's power to sell or assign the receivables generated by its credit card accounts? Madden concluded that the application of state usury laws would neither prevent nor significantly interfere with consumer debt sales by national banks to third parties (786 F.3d at 251), and it has been suggested that "state usury laws do not actually prevent the sale of bank loans to non-banks" because "[t]he loan purchaser may always choose to forgo collecting interest that exceeds the state usury cap".[7]

However, this reasoning ignores both Supreme Court and Second Circuit precedent as to what constitutes a "sale". The Court has repeatedly defined "sale" to mean "a contract between parties to take and to pass rights of property for money" (Williamson v. Berry, 49 U.S. 495, 496 (1850); Commissioner of Internal Revenue v. Brown, 380 U.S. 563, 571 (1965)), and has recognized that "some of the most essential property rights [include] the right to use the property [and] to receive income produced by it". United States v. Craft, 535 U.S. 274, 283 (2002). Citing Williamson, the Second Circuit has held that in order for a sale to occur, "[i]t is essential that . . . the *seller's* right of property must pass to the purchaser". MacDonald v. Commissioner of Internal Revenue, 76 F.2d 513, 514 (2d Cir. 1935) (emphasis added). If Chase USA can receive interest exceeding state usury limits but defendants cannot, then Chase USA's right of property in the receivables has not passed to them, and there has been no sale.

---

between a national association and an association under the State laws except where the distinction is specifically made by Congress". Anderson v. First Security Bank of Idaho, National Association, 54 F. Supp. 937, 938 (D. Idaho 1944). "National banks have been National favorites . . . . It could not have been intended, therefore, to expose them to the hazard of unfriendly legislation by the States, or to ruinous competition with State banks." Tiffany v. National Bank of Missouri, 85 U.S. 409, 413 (1873).

[7]   January 5, 2020 submission by Georgetown Law School Professor Adam J. Levitin to the Office of the Comptroller of the Currency, p. 10 (https://www.regulations.gov, Docket ID OCC-2019-0027).

The same holds true for an assignment. At oral argument, Petersen argued that although "the ability to export a state interest rate is a power of a national bank, it is not a power they can hand out by assignment to whoever they want . . . . The State of New York could grant assignees the same rights as the assignors, but that is not the law." [53], pp. 50-51. However, if defendants do not have Chase USA's right to receive interest irrespective of state usury laws, then there has been no assignment, since "an assignee takes all of the rights of the assignor, no greater and no less". In re New Haven Projects Ltd. Liability Co., 225 F.3d 283, 290, n. 4 (2d Cir. 2000). "When a valid assignment is made, the assignee . . . acquires whatever rights the latter had." United States v. Watts, 786 F.3d 152, 167, n. 7 (2d Cir. 2015).

Therefore, since applying New York's usury statutes to defendants would prevent Chase USA's ability to sell or assign the receivables from its credit card accounts, they are preempted.

## C.    Petersen's Unjust Enrichment Claim

Petersen's second cause of action alleges that "[d]efendants have been and continue to be unjustly enriched at the expense of [Petersen] and the Class as a result of their payment of excessive and improper interest rates", and asks that they "be required to disgorge the monies they have unjustly obtained". Complaint [1], ¶¶101, 103.   However, since his "unjust enrichment claim relies on identical facts as [his usury] claim . . . it too is preempted." Baptista v. JPMorgan Chase Bank, N.A., 640 F.3d 1194, 1198 (11th Cir. 2011). *See* defendants' Memorandum of Law [21-1], p. 11, n. 7 and pp. 22-3.

## CONCLUSION

For these reasons, I recommend that defendants' motion to dismiss [21] be granted. Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the clerk of this court by February 5, 2020. Any requests for extension of this deadline must be made to Judge Vilardo.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: January 22, 2020

                                          /s/ Jeremiah J. McCarthy
                                          JEREMIAH J. MCCARTHY
                                          United States Magistrate Judge